ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br>V.<br><br>YANZIE VÁZQUEZ GONZÁLEZ<br><br>Peticionario | TA2026CE00002 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: K VI2024G0033<br><br>Sobre: Arts. 93(a) y 249(c) del Código Penal; Arts. 6.05 y 6.14(b) de la Ley Núm. 168-2019 |
| PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br>V.<br><br>MICHAEL SÁNCHEZ OGANDO<br><br>Peticionario | TA2026CE00047 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: K VI2024G0017<br><br>Sobre: Arts. 93(a) y 249(c) del Código Penal; Arts. 6.05 y 6.14(b) de la Ley Núm. 168-2019 |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 14 de mayo de 2026.

Los señores Yanzie Vázquez González y Michael Sánchez Ogando (peticionarios) presentaron sendos recursos de *certiorari*, consolidados por su intrínseca relación, mediante los cuales solicitaron la revisión de las *Resoluciones* emitidas el 3 de octubre de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI).[1] En estas, el foro primario denegó sus respectivas mociones de desestimación al amparo de la Regla 64 (p) de Procedimiento Criminal, 34 LPRA Ap. II, tras concluir que, durante la vista preliminar, no medió ausencia total de prueba sobre la conexión de cada peticionario con los elementos de los delitos imputados.

---

[1] Notificadas el 7 de octubre de 2025.

Tras considerar los planteamientos de las partes y la transcripción de la prueba oral (TPO), se deniega la expedición de los autos de *certiorari* solicitados por los peticionarios.

**I.**

El Ministerio Público presentó varias denuncias contra el señor Vázquez González, conocido como Yanzie; el señor Sánchez Ogando, conocido como Panda, y contra otras catorce (14) personas por múltiples cargos por infracción al Código Penal de Puerto Rico, 33 LPRA sec. 5001 *et seq.,* y a la *Ley de Armas de Puerto Rico*, Ley Núm. 168-2019, 25 LPRA sec. 461 *et seq.*, por hechos ocurridos el 29 de julio de 2022 en San Juan, Puerto Rico.

Eventualmente, el TPI celebró la vista preliminar entre los meses de mayo a julio de 2024. Durante dicha vista, declararon la señora Enid Feliciano González y los señores Félix Castro Santana y Pablo Jonuel Fuentes Morales, cuyos testimonios se sintetizan:

**Enid Feliciano González**

La investigadora del Instituto de Ciencias Forenses atestó que, alrededor de las 9:30 p.m. del 29 de julio de 2022, acudió al Residencial Rafael Cordero Dávila, conocido como Residencial Quintana, donde documentó una escena con tres (3) occisos en el lugar y un cuarto occiso en el Centro Médico.[2] Precisó que levantó aproximadamente 505 casquillos de múltiples calibres, proyectiles, fragmentos, blindajes, abastecedores y otros objetos.[3] Aceptó que sus informes de hallazgos no especificaban dónde se ocuparon ciertas piezas, más allá de referencias generales a la escena.[4]

**Félix Castro Santana**

El sargento, adscrito a la Sección Técnica de Grabaciones de San Juan de la Policía de Puerto Rico, declaró que, a solicitud del

---

[2] TPO del 15 de mayo de 2024 I, págs. 4-8.
[3] *Íd.*, págs. 6-8, 23-24; 63.
[4] *Íd.*, págs. 111-115.

agente Carlos Colón, extrajo un video de las cámaras del puesto de gasolina ubicado en la avenida Barbosa, esquina con la calle Guayama por los hechos del 29 de julio de 2022.[5] Indicó que las cámaras mostraban el interior, el exterior, las bombas de gasolina, parte de las calles, así como la entrada y salida de vehículos. Además, admitió que no observó las grabaciones de otras cámaras.[6]

**Pablo Jonuel Fuentes Morales**

El testigo expuso su vínculo con la organización FARC o *La Familia Nunca Muere* y aceptó que presenció los hechos del 29 de julio de 2022 en el Residencial Quintana.[7] Declaró que, antes de salir hacia el residencial, varias personas se reunieron en la granja, cerca del estacionamiento del Colegio Santo Domingo Savio, donde revisaron que las armas, los peines, las balas y los vehículos estuvieran listos.[8]

En cuanto a Sánchez Ogando, conocido como Panda, manifestó que lo vio abordar un vehículo Hyundai Palisade junto a Mono, Pelota y Vaquero, y que antes de salir hacia el Residencial Quintana lo observó portando una Glock.[9] Relató que Yanzie Vázquez González viajaba en un Honda Civic conducido por Bebote y que, antes de partir hacia Quintana, lo vio con una Glock y un AK Micro.[10]

Testificó que salieron casi a las 8:00 p.m.; que unos vehículos se encontraron en un puesto de gasolina cerca de la avenida Barbosa; y que se dirigieron al Residencial Quintana.[11] Sostuvo que la encomienda consistía en simular una transacción de sustancias controladas para ganar la confianza de Gordo y dispararle.[12] Además,

---

[5] TPO del 15 de mayo de 2024 II, págs. 57-59; 67-71.
[6] *Íd.*, págs. 83-84.
[7] *Íd.*, págs. 188-189.
[8] *Íd.*, págs. 111-112; 175-176; 248-249.
[9] *Íd.*, págs. 184-185; 249.
[10] *Íd.*, pág. 249.
[11] *Íd.*, págs. 188-189; 218-219.
[12] *Íd.*, pág. 172.

reseñó la llegada de un Hyundai Palisade conducido por Panda y de un Honda Civic del cual se bajaron Yanzie y otras personas.[13]

Declaró que Cachete colocó una libra de marihuana sobre el bonete de un Volkswagen, sacó una Glock y le disparó a Gordo.[14] Luego, describió el intercambio de disparos e indicó que se refugió detrás del Volkswagen.[15] Señaló que regresaron a la granja y que, después de salir a buscar balas, retornó a dicho lugar, donde permanecían Panda, Yanzie y otras personas.[16]

Tras evaluar la prueba presentada, el TPI encontró causa probable para acusar a los peticionarios por infracción a los Artículos 93(A) y 249(c) del Código Penal, *supra*, secs. 5142 y 5339, y a los Artículos 6.05 y 6.14(b) de la *Ley de Armas, supra*, secs. 466d y 466m. No obstante, no encontró causa en cuanto al Artículo 244 del Código Penal, *supra*, sec. 5334.

Más adelante, los peticionarios solicitaron la desestimación bajo la Regla 64 (p) de Procedimiento Criminal, *supra*, al sostener que la prueba presentada en la vista preliminar no los conectó adecuadamente con los delitos imputados. Destacaron que el señor Fuentes Morales era un testigo cooperador con historial delictivo, sin atribuirles una actuación concreta ni declarar que dieron órdenes, facilitaron las armas, dispararon, ayudaron, coordinaron o participaron activamente en los hechos.

Por su parte, el Ministerio Público se opuso al manifestar que la defensa pretendía exigir en la etapa de vista preliminar un estándar propio del juicio en su fondo. Adujo que en esta etapa solo se requería demostrar causa probable, no culpabilidad más allá de toda duda razonable, y que la prueba presentada permitía inferir que estos pertenecían o participaban en la organización FARC, que estuvieron

---

[13] *Íd.*, pág. 249.
[14] *Íd.*, págs. 228-229.
[15] *Íd.*, pág. 229.
[16] *Íd.*, págs. 95-96.

presentes en eventos relevantes y que sus conductas debían evaluarse dentro de una actuación concertada de grupo. Entendió que las controversias sobre credibilidad, peso de la prueba, contradicciones o inferencias debían reservarse para el juicio, ya que existía prueba suficiente para sostener las acusaciones.

El 3 de octubre de 2025, el TPI emitió sendas *Resoluciones* en las que denegó las solicitudes de desestimación bajo la Regla 64 (p) de Procedimiento Criminal, *supra*, de los peticionarios.[17] Concluyó que no existió ausencia total de prueba en la vista preliminar, ya que el Ministerio Público presentó una *scintilla* de prueba que vinculó a los peticionarios con los elementos de los delitos imputados. Ante ello, mantuvo la determinación de causa probable para acusar.

En cuanto al señor Vázquez González, el foro primario destacó que la prueba lo vinculó con la FARC, la preparación de armas, la planificación en la granja; la portación de una Glock y un AK Micro; el uso del vehículo de rescate y su regreso a la granja tras culminar los hechos. Concluyó que ello era prueba suficiente, en esta etapa procesal, para inferir una participación consciente e intencional dentro del concierto o designio común con los otros coacusados.

Respecto al señor Sánchez Ogando o Panda, el foro recurrido resolvió que la prueba testifical lo ubicó en la granja durante la planificación, la preparación de vehículos y la verificación de armas, peines y municiones; que condujo el Hyundai Palisade en el que viajaban otros coacusados armados, portaba una Glock, regresó tras los hechos y estuvo presente en conversaciones posteriores. A su juicio, ello satisfizo el umbral probatorio de vista preliminar para inferir una participación consciente e intencional dentro del concierto o designio común imputado.

---

[17] Notificadas el 7 de octubre de 2025.

En torno a los cargos bajo el Artículo 6.05 de la *Ley de Armas*, *supra*, sec. 466d, el TPI determinó que existía prueba suficiente de posesión constructiva. Razonó que, aunque no tuvieron tenencia física inmediata de todas las armas, la prueba permitía inferir conocimiento, control y manejo compartido sobre estas, conforme a su participación en la preparación, verificación y ejecución del plan.

El 22 de octubre de 2025, los peticionarios solicitaron reconsideración de la denegatoria de sus mociones de desestimación y reiteraron que la prueba desfilada durante la vista preliminar no estableció, *prima facie*, sus conexiones con los delitos imputados. Alegaron que el Ministerio Público descansó en inferencias insuficientes y señalamientos generales del señor Fuentes Morales, sin prueba de actos afirmativos, órdenes, manejo de armas, acuerdo criminal o participación consciente atribuible a cada uno. A su vez, enfatizaron que la determinación de no causa por conspiración bajo el Artículo 244 del Código Penal, *supra*, sec. 5334, impedía sostener una teoría de concierto o designio común sin prueba independiente.

En oposición, el 1 de diciembre de 2025, el Ministerio Público expuso que los peticionarios cuestionaron la suficiencia probatoria bajo un estándar impropio. Arguyó que la desestimación solo procedía ante ausencia total de prueba o violación procesal y que, en este caso, la prueba presentada sostuvo la determinación de causa probable por coautoría al demostrar el vínculo de los peticionarios con funciones previas, concomitantes o posteriores a los hechos.

El 3 de diciembre de 2025, el foro primario denegó las reconsideraciones de los peticionarios.[18]

Aún inconformes, los días 4 y 7 de enero de 2026, los señores Vázquez González y Sánchez Ogando presentaron sus recursos de *certiorari*, en los que plantearon que el TPI cometió el siguiente error:

---

[18] Notificadas el 5 de diciembre de 2025.

ERRÓ EL TRIBUNAL AL DETERMINAR NO HA LUGAR LA SOLICITUD DE DESESTIMACIÓN AL AMPARO DE LA REGLA 64 (P) DE PROCEDIMIENTO CRIMINAL PRESENTADA POR LA DEFENSA, AL CONCLUIR QUE LA DEFENSA NO DEMOSTRÓ AUSENCIA TOTAL DE PRUEBA QUE CONECTARA [A LOS PETICIONARIOS] CON LOS ELEMENTOS DE LOS DELITOS IMPUTADOS.

En esencia, los peticionarios sostuvieron que el foro recurrido incidió al denegar sus solicitudes de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, *supra*, por entender que existió ausencia total de prueba que los vinculara con los elementos constitutivos de los delitos imputados. Alegaron que la prueba desfilada no estableció participación más allá de una mera presencia; que recayó una determinación de no causa por conspiración, y que el TPI concluyó la existencia de posesión constructiva sin apoyo evidenciario. Asimismo, adujeron que no se presentó prueba sobre sus actos u omisiones dirigidos a causar la muerte de las víctimas, por lo que solicitaron la revocación de los dictámenes recurridos.

Por su parte, el 20 de abril de 2026, la Oficina del Procurador General, en representación del Pueblo de Puerto Rico, sostuvo que no procedía la revocación de las resoluciones recurridas. A tales efectos, planteó que la prueba desfilada en vista preliminar demostró que los peticionarios actuaron en concierto y común acuerdo con otros coacusados; que se desplazaron en varios vehículos hasta el residencial bajo la apariencia de una compra de sustancias controladas; que se efectuaron múltiples disparos con distintas armas de fuego; que los hechos culminaron en la muerte de cuatro (4) personas, y que fueron identificados por un testigo, cuya versión fue corroborada mediante evidencia fotográfica y el testimonio de la investigadora forense, quien levantó cientos de casquillos en la escena. Por ello, solicitó que se denegara la expedición del auto de *certiorari* o se confirmaran los dictámenes recurridos.

## II.

### A. *Certiorari*

El *certiorari* es un vehículo procesal extraordinario discrecional que permite que un tribunal de mayor jerarquía revise decisiones de un foro inferior. *Pueblo v. Rivera Montalvo*, 205 DPR 352 (2020); *Pueblo v. Díaz de León*, 176 DPR 913 (2009). La expedición del auto procede con cautela, por razones de peso y solo cuando no existe otro remedio adecuado que proteja eficaz y rápidamente los derechos de la parte peticionaria. *Íd.; Pérez v. Tribunal*, 69 DPR 4 (1948).

Por otro lado, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), dispone los criterios que orientan el ejercicio de nuestra facultad discrecional para atender una petición de *certiorari*, al considerar:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Cuando se deniega la expedición del auto de *certiorari*, no es necesario exponer las razones de dicha determinación. *IG Builders et al. v. BBVAPR*, 185 DPR 307 (2012). En tal caso, este Tribunal no asume jurisdicción sobre el asunto ni lo resuelve en sus méritos.

Además, este Tribunal debe deferencia a las determinaciones de hecho, credibilidad y apreciación de la prueba del TPI, excepto

medie pasión, prejuicio, parcialidad, craso abuso de discreción, error manifiesto o error de derecho. *Pueblo v. Rivera Montalvo, supra.*

## B. Vista preliminar

La vista preliminar, regida por la Regla 23 de Procedimiento Criminal, *supra,* es una etapa previa al juicio cuyo propósito es evitar que una persona sea sometida injustificadamente a un proceso penal, por lo que no constituye un mini juicio ni exige una adjudicación final de culpabilidad. *Pueblo v. Pérez Delgado,* 211 DPR 654 (2023); *Pueblo v. Guadalupe Rivera,* 206 DPR 616 (2021); *Pueblo v. Rivera Cuevas,* 181 DPR 699 (2011); *Pueblo v. Rivera Vázquez,* 177 DPR 868 (2010); *Pueblo v. Rivera Alicea,* 125 DPR 37 (1989). El Ministerio Público no está obligado a presentar toda la prueba de cargo que desfilará en el juicio, ya que su carga probatoria se limita a presentar una *scintilla* de evidencia que permita una determinación *prima facie* de que se cometió un delito grave y la conexión del imputado. *Pueblo v. Pérez Delgado, supra.* Una vez cumple con esa carga, el magistrado deberá determinar causa probable para acusar. *Íd.*

Frente a una determinación de causa probable para acusar, el acusado tiene como remedio solicitar la desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, *supra. Íd.; Pueblo v. Guadalupe Rivera, supra.* La determinación de causa probable goza de presunción de corrección, por lo que el juez o la jueza que evalúa esta moción no realiza una nueva determinación a esos fines ni sustituye libremente el criterio del magistrado que presidió la vista preliminar. *Íd.* Su análisis se limita a examinar la prueba presentada para determinar si hubo ausencia total de prueba sobre la comisión del delito o sobre la conexión del acusado. *Íd.*

## III.

Tras examinar sosegadamente el expediente, el derecho aplicable y la transcripción de la prueba oral, procede denegar la expedición de los autos de *certiorari* solicitados. Los peticionarios no

demostraron que concurriera alguno de los criterios bajo la Regla 40 del Reglamento de este Tribunal, *supra*, ni establecieron que el foro recurrido incurrió en prejuicio, parcialidad, error craso o manifiesto en la apreciación de la prueba o en la aplicación del derecho.

El TPI denegó las solicitudes de desestimación de ambos peticionarios al amparo de la Regla 64(p) de Procedimiento Criminal, *supra*, al concluir que la prueba desfilada en la vista preliminar no reflejó ausencia total de conexión entre estos con los delitos imputados. Razonó que la prueba los vinculó con la preparación previa, el traslado hacia el lugar de los hechos, la portación o disponibilidad de armas de fuego y una actuación concertada que, en esa etapa procesal, bastaba para establecer *prima facie* la conexión con los delitos imputados bajo concierto o designio común. Así, estableció que el Ministerio Público demostró una *scintilla* de evidencia suficiente para sostener la determinación de causa probable para acusar por los delitos imputados. Este Tribunal no advierte error ni irrazonabilidad en dicho proceder, conforme a la prueba presentada durante la vista preliminar.

**IV.**

Por los fundamentos que anteceden, se deniega la expedición de los autos de *certiorari* solicitados por los señores Vázquez González y Sánchez Ogando.

Se devuelve el caso al TPI y se ordena la continuación de los procedimientos, sin necesidad de esperar por la expedición del correspondiente mandato de este Tribunal. Véase Reglas 211 de Procedimiento Criminal, *supra*, y Regla 35 del Reglamento del Tribunal de Apelaciones, *supra*.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones